THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL LABRADOR, Defendant and Appellant, and FÉLIX B. ORTIZ, Defendant.

No. 7871. Argued November 22, 1940.—Decided December 5, 1940.

674

*Rafael Labrador, in pro. per.,* for appellant. *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The defendant-appellant was convicted of the crime of forgery in the District Court of Arecibo. The information brought against him reads as follows:

"The said defendants, Rafael Labrador and Félix B. Ortiz, prior to the date of the filing of this information, to wit, on January 8, 1937, in Quebradillas, P. R., which forms part of the judicial district of Arecibo, P. R., did unlawfully, wilfully, and maliciously and with the intent to defraud Carlos Roure and Pedro Orpi, of Quebradillas and Arecibo, respectively, imitate and forge a check which reads as follows:

"No 48.                              Arecibo, P. R., January 8, 1937.
                The National City Bank of New York
                        Arecibo Branch
Pay to the order of Miguel A. Vargas_____$15.75
Fifteen_____75/100 U. S. Dollars
                        (Sgd.)   Pedro Orpi'

signing on the face of said document the name of Pedro Orpi, which signature is not the genuine signature of Pedro Orpi, but was imitated and forged by the defendant, as well as the whole of the handwriting on said check, by said defendant Félix B. Ortiz signing said check with the fictitious name of Miguel A. Vargas. That the

defendants uttered said check as genuine by cashing the same in the drugstore of Carlos Roure, and received therefor in cash and in goods the sum of $15.75, which they appropriated to their own use; all with knowledge that said check was false and was imitated and forged and with the intention to prejudice, injure, and defraud Pedro Orpi and Carlos Roure.''

The defendants were jointly tried and the jury brought in a verdict of guilty. The defendant Rafael Labrador took an appeal from the judgment whereby he was sentenced to one year's imprisonment in the penitentiary.

From the transcript of the evidence the following facts appear:

The two defendants, together with an individual called Batista and another person, traveled through the Island in a rented public automobile. The defendant Félix B. Ortiz drove the car. The automobile stopped in the town of Quebradillas within the judicial district of Arecibo, on the square of said town, in front of the Roure Drugstore. There both defendants alighted from the car. Rafael Labrador asked the clerk at the drugstore to pour some medicine drops in his eyes and also purchased a box of Coty face powder. Félix B. Ortiz bought some bandages and other things. The defendant Ortiz delivered the check described in the information. The young lady in charge of the drugstore, in accordance with the instructions of the defendants, collected the amount spent by the latter which was $2.30, and delivered the change to Ortiz. The check was sent to the bank where it was rejected, as the signature of Orpi was not genuine.

The evidence for the prosecution also establishes the following:

Miss Florit, in charge of the drugstore, testified that the defendant Ortiz addressed her and told her that he was Miguel A. Vargas in whose favor the check had been issued; and that he endorsed it in her presence with that name, upon the counter of the drugstore; that this happened at a distance of a few steps from Labrador, who was present during

the transaction; and that when Ortiz entered the drugstore he asked whether she was willing to change a check of Don Pedro Orpi. According to the testimony of this young lady, the defendants talked among themselves while the endorsement was being made. She testified thus:

"Q. But did he ask you to change a check?—A. Yes, sir; and when I was wrapping the package, the goods being still on the counter, he asked me whether I could loan him a pen to sign the check, that the check was in his name, that he was Miguel A. Vargas and I gave him a pen and he signed the check, and I collected two odd dollars, I am not sure that it was $2.30, and I gave him the change and they talked about the work, that one of them could not go to work, that he should excuse him with the chief, that was the conversation between them, and this man here told him that he should remember that they were taking a patient who was seriously ill in the car, that he was on a hurry.

"Q. Who?—A. Labrador.

"A. What did he tell Ortiz?—A. That they were taking a patient who was seriously ill, and he was in a greater hurry than the other man, that he did not seem to be in any hurry, and I made the package of the medicines and gave him the change and they went away."

Justino Santiago, a police officer, testified that when he arrested the defendants, the latter confessed the commission of the offense. Santiago stated: "The defendant Félix B. Ortiz told me that he had cashed the check in the Roure Drugstore, but that the check had been filled in by Labrador and that he had indorsed it as Miguel A. Vargas, and upon being asked Labrador admitted that it was true that he had filled in the check." Besides those witnesses, Pedro Orpi, the druggist Roure, and an employee of the bank also testified.

The evidence for the defense was jointly introduced, although the defendants were represented by different counsel. Both defendants testified, in short, that Batista carried the check; that when Ortiz announced that the automobile needed gasoline, Batista delivered to him the check for him to cash, collect the fare, and buy gasoline. Ortiz claimed that he had

received the check indorsed and that it had been changed for him at the drugstore without his indorsing or signing the same.

Labrador, the appellant herein, stated that he saw when Batista delivered the check to Ortiz and when the latter changed it. On cross-examination by the district attorney, he testified thus:

"Q. And you stated that while at the drugstore the defendant Ortiz changed the check and that you did not hear the conversation of the person who changed it?—A. I heard the substance of the talk.

"Q. How was that?—A. He asked the lady, Doña Isabel, whether in the absence of the owner of the drugstore she was authorized to change a check, for which he must get change, and she answered that she could change it.

"Q. Was that before or after the sale?—A. At that moment.

"Q. Did he not ask whether she knew Pedro Orpi?—A. I did not hear.

"Q. Did you see him change the check?—A. I did not, either.

"Q. Did you see when he stated that he was Miguel A. Vargas? A. I did not, either.

"Q. But were you there?—A. I was on a delicate matter for me."

The appellant also admitted that he had purchased a box of face powder which was paid by Ortiz, together with the other medicines bought by the latter, with the check. According to the testimony of Ortiz, "What he got there he got with the authorization of the person who gave the check. He authorized him to get a box of Coty face powder to take to the wife."

■ The appellant has assigned six errors. The question raised by the first assignment is as follows: May several acts done in connection with the forgery of an instrument, such as the issuance of the check, its indorsement, its presentation, and its collection, be joined in a single information?

The same question was considered in *People* v. *Jiménez,* 34 P.R.R. 136, and it was decided adversely to the contention of the appellant thus:

"This section (413 of the Penal Code) defines more than one way in which the crime of forgery may be committed. A single offense may be committed by doing one of the acts enumerated or several of them, but whether there be one or several acts, the essential element of the offense being the intent to defraud, the crime is only that of forgery.

"The indictment in this case sets up the various acts done by the defendant in committing the offense and they are included in section 413. It is not a defect, therefore, as the appellant contends, that the charges are set up jointly and not separately in the indictment. The indictment in this case is almost similar in terms to that in *People* v. *Vélez,* 17 P.R.R. 977, which was held sufficient."

See 12 Cal. Jur. 660; *People* v. *Mitchell,* 92 Cal. 590, 28 P. 597, 598; *People* v. *Harrold,* 84 Cal. 567, 24 P. 106; *People* v. *Leyshon,* 108 Cal. 440, 41 P. 480.

■ The second question is whether at the commencement of the trial, the prosecuting attorney must choose one of the acts charged in the indictment and present his case on the basis of that act. On that point Corpus Juris says:

" ... Where the statute permits the joinder of distinct offenses in different counts, the court is not required to compel the prosecutor to elect upon which count he will try defendant. Accordingly where counts respectively charging forgery and uttering forged paper are united in one indictment, the prosecutor cannot be required to elect between these two counts; and it has similarly been held that where the indictment charges several offenses, distinct in point of law yet springing out of substantially the same transaction, such as the forgery of a mortgage, of the certificate of acknowledgment thereof, and of the accompanying bond and likewise the uttering of each, defendant is not entitled as a matter of right to compel an election." 26 C. J. 957, sec. 114.

The lower court did not err in overruling the peremptory demurrer.

█ The third, fourth, and fifth assignments read thus:

"3. In considering the defendant Rafael Labrador as principal or coauthor of the acts characterized as criminal.

"4. In having given credence to the testimony of the witness Justino Santiago, in that part thereof relating to Rafael Labrador.

"5. In considering as forgery the only act attributed to Rafael Labrador."

The appellant in his brief charges error in the weighing of the evidence by the court. He urges that the information contains two charges: 1, against both defendants, that of having forged the check by imitating the signature of Pedro Orpi; 2, against the defendant Félix B. Ortiz, that of indorsing the check with the name of Miguel A. Vargas.

The defendant says that the first charge which is the one that concerns him, was not duly proved, since the conversation which the witness Santiago, a police officer, attributed to him had not been corroborated.

There was no error in the weighing of the evidence, which, in our opinion, is sufficient to support the verdict and the judgment rendered against the appellant. The admission or confession made by the defendant-appellant to the Policeman Justino Santiago was amply justified by the remaining portion of the evidence. The defendant Labrador not only admitted that he made the check, but also that he was present and saw and heard when the defendant Ortiz indorsed the check and stated that he was Miguel A. Vargas, that is, the person in whose favor the check appeared to have been issued. It is not charged, nor does it appear from the record, that the jury had acted under the influence of passion, prejudice, or partiality. We must respect their verdict and affirm the judgment appealed from.